In re Cogentus Pharmaceuticals, Inc.

Case No. 09-50250 ASW

Exhibit A

TO

*DECLARATION OF MARK S. BOSTICK IN SUPPORT*
*OF REQUEST FOR ORDER DISALLOWING CLAIM 114*
*[PARKERSBURG CARDIOLOGY ASSOCIATES]*

1   Mark S. Bostick (Bar No. 111241)
    **WENDEL, ROSEN, BLACK & DEAN LLP**
2   1111 Broadway, 24th Floor
    Oakland, California 94607
3   Telephone: (510) 834-6600
    Fax: (510) 834-1928
4   Email: mbostick@wendel.com

5   Attorneys for Trustee
    John W. Richardson

6

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12  In re                                    Case No. 09-50250 ASW
                                             Chapter 7
13  COGENTUS PHARMACEUTICALS,
    INC., fdba AMPLIFY THERAPEUTICS,          **TRUSTEE'S OBJECTION TO**
14  INC.,                                     **UNSECURED CLAIM OF**
                                             **PARKERSBURG CARDIOLOGY**
15                     Debtor.                **ASSOCIATES AND NOTICE THEREOF**

16

17                                           **[CLAIM NO. 114]**

18  **TO PARKERSBURG CARDIOLOGY ASSOCIATES AND THEIR ATTORNEY OF
    RECORD:**
19
            John W. Richardson ("Richardson"), the duly appointed and acting trustee of the above-
20
    captioned estate, hereby objects to the proof of claim filed by or on behalf of Parkersburg
21
    Cardiology Associates ("Claimant") on May 11, 2009, in the amount of $4,514.12, registered as
22
    Claim No. 114, a true and correct copy of which is attached hereto as **Exhibit A** (the "Claim").
23
            The Trustee objects to the Claim under Bankruptcy Rule 3007(a) and Bankruptcy Code
24
    Section 502(b) on the grounds that Claimant failed to sign and date their claim. The Trustee
25
    requests that the Court enter an order disallowing the Claim in its entirety.
26

27

28

001781.0248\1968869.1

*TRUSTEE'S OBJECTION TO UNSECURED CLAIM OF*
*PARKERSBURG CARDIOLOGY ASSOCIATES AND*                    1
*NOTICE THEREOF [CLAIM NO. 114]*

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

1    **PLEASE TAKE NOTICE** that this objection is governed by Bankruptcy Local Rule

2    9014-1(b)(3)(A), which provides, in pertinent part, that unless within 21 days of the date of

3    service of this Notice (as indicated below), a party files and serves on the undersigned an

4    objection or request for hearing, the court may enter the requested relief, i.e. disallowance of the

5    Claim as a priority claim, by default, without hearing. Any objection or request for hearing must

6    be accompanied by any declarations or memoranda of law the party objecting or requesting

7    wishes to present in support of its position. If an objection or request for hearing is timely filed

8    and served, the undersigned will give the objecting party written notice of hearing on not less than

9    10 days notice.

10    **NOTICE IS FURTHER GIVEN** that pursuant to Bankruptcy Local Rule 3007-1, if the

11    opposition to this Objection to Claim raises a factual dispute, the initial hearing will be deemed a

12    status conference, at which the Bankruptcy Court will not receive evidence. If the opposition

13    involves only a matter of law, the merits of the objection and opposition thereto may be argued or

14    decided at the initial hearing.

15

16    Dated: August 31, 2011                         WENDEL, ROSEN, BLACK & DEAN LLP

17

18                                                 By: */s/ Mark S. Bostick*
                                                        Mark S. Bostick
19                                                      Attorneys for Trustee
                                                        John W. Richardson
20

21

22

23

24

25

26

27

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

001781.0248\1968869.1    *TRUSTEE'S OBJECTION TO UNSECURED CLAIM OF*
                          *PARKERSBURG CARDIOLOGY ASSOCIATES AND*          2
                          *NOTICE THEREOF [CLAIM NO. 114]*

**In re Cogentus Pharmaceuticals, Inc.**

**Case No. 09-50250 ASW**

**Exhibit A**

**TO**

*TRUSTEE'S OBJECTION TO UNSECURED CLAIM OF PARKERSBURG CARDIOLOGY ASSOCIATES AND NOTICE THEREOF [CLAIM NO. 114]*

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Congentus Pharmaceuticals, Inc. | Case Number:<br>09-50250 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Parkersburg Cardiology Associates, Inc.**

Name and address where notices should be sent:
Parkersburg Cardiology Associates, Inc.
600 18th Street, Suite 512
Parkersburg, WV  26101
Telephone number:
(304)424-4574

*FILED*
*MAY 11 2009*
*CLERK*
*United States Bankruptcy Court*
*San Jose, California*

Name and address where payment should be sent (if different from above):

Telephone number.

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:  $ 4,514.12

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim:  **Services performed**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:   **1064**

   3a. Debtor may have scheduled account as:_____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property:$_____ Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____  Basis for perfection:_____

Amount of Secured Claim: $_____  Amount Unsecured: $_____

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Parkersburg Cardiology Associates, Inc.

600 18th Street, Suite 512
Parkersburg, WV 26101
Phone 304-424-4574

# INVOICE

Invoice #1
Date: January 15, 2009

**To:**
Cogentus
1891 Page Mill Road
Suite 200
Palo Alto, CA 94304

**Comments or special instructions:**

| TERMS |
|-------|
| Past Due |

| DATE | QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|------|----------|-------------|------------|-------|
| 10/8/08 | 1 | Study Visit 5 – Patient 40723 | $744.48 | $744.48 |
| 10/15/08 | 1 | Study Visit 5 – Patient 40797 | $744.48 | $744.48 |
| 10/15/08 | 1 | Study Visit 6 – Patient 40281 | $786.72 | $786.72 |
| 10/8/08 | 1 | Study Visit 6 – Patient 40278 | $786.72 | $786.72 |
| 11/30/08 | 1 | Study Visit 6 – Patient 40354 | $786.72 | $786.72 |
| 12/2/08 | 1 | Study Visit 6 – Patient 40723 | $786.72 | $786.72 |
| 12/11/08 | 1 | Study Visit 6 – Patient 40797 | $786.72 | $786.72 |
| 12/23/08 | 1 | Study Visit 7 – Patient 40281 | $744.48 | $744.48 |
| 12/3/08 | 1 | Study Visit 7 – Patient 40278 | $744.48 | $744.48 |
| 12/29/08 | 1 | Study Visit 7 – Patient 40354 | $744.48 | $744.48 |

Dates of Birth: 40281 – 4/4/70
40278 – 8/1/51
40354 – 11/18/64
40723 – 9/1/58
40797 – 1/5/42

| | |
|---|---|
| SUBTOTAL | $4,514.12 |
| SALES TAX | |
| S&H | |
| TOTAL due | $4,514.12 |

Make all checks payable to Parkersburg Cardiology Associates, Inc.
If you have any questions concerning this invoice, contact John at 304-424-4574

PAREXEL International
200 West Street
Waltham, Massachusetts 02451-1163
Main: +1 781 487 9900  Fax: +1 781 768 3512
www.parexel.com

# PAREXEL

February 29, 2008

Parkersburg Cardiology Associates, Inc.
600 18th Street, Suite 512
Parkersburg, WV
26101

RE: Cogentus CG104

Dear Dr. Pamfilis:

Enclosed please find a fully executed original agreement for PI: Stanley M. Pamfilis,
M.D., for your records.

Thank you for your time and effort spent working on this contract. I look forward to
working with you in the future. Feel free to contact me at 781-434-5475 with any
questions or comments.

Best regards,

Katy L. Shaver

Katy L. Shaver
Clinical Trial Specialist II
START Group-NA SSU
PAREXEL International
200 West Street
Waltham, MA
02451
Phone: (781) 434-5475
Fax: (978) 848-2064

# INVESTIGATIONAL SITE AGREEMENT

THIS AGREEMENT (the "Agreement"), is entered into between PAREXEL International, LLC, a Massachusetts corporation located at 200 West Street, Waltham, MA, 02451 (hereinafter referred to as "PAREXEL"), and Parkersburg Cardiology Associates, Inc. having a place of business at 600 18th Street, Suite 512 Parkersburg, WV 26101 (hereinafter referred to as the "Institution"), and Stanley M. Pamfilis, M.D. (hereinafter referred to as the "Principal Investigator").

WHEREAS, PAREXEL is acting on behalf of Cogentus Pharmaceuticals, Inc. ("Sponsor") to arrange and administer a clinical study to evaluate Sponsor's drug, CGT-2168 ("Study Drug"), and has entered into an agreement with Sponsor concerning the management of such study; and

WHEREAS, Stanley M. Pamfilis, M.D. is employed by or affiliated with Institution and shall serve as Principal Investigator for this Study (defined below in Article 1, Study Protocol); Institution and Principal Investigator shall hereinafter be collectively referred to as "the Site";

NOW THEREFORE, In consideration of the promises and mutual covenants herein contained, the parties agree to the following:

## Article 1. Study Protocol

1.1    The scope and nature of the clinical trial to be performed will be in strict accordance with the study entitled, "*A Randomized, Double-Blind, Double Dummy, Parallel Group, Phase 3 Efficacy and Safety Study of CGT-2168 Compared with Clopidogrel to Reduce the Incidence of Upper Gastrointestinal Events including Bleeding and Symptomatic Ulcer Disease*", and any subsequent amendments thereto, attached hereto as Appendix I (the "Protocol"). The Protocol fully details the clinical research activities and responsibilities to be undertaken, pursued, and followed with all due diligence, by the Site. The Protocol will be considered final after it is signed by the Sponsor and Principal Investigator and approved by the pertinent Institutional Review Board (IRB). Thereafter, the Protocol may be amended only by prior written consent of Sponsor and subsequent approval by the IRB (hereinafter the Protocol and approved amendments shall be referred to as the "Study" or the "Protocol"). A copy of the signed Principal Investigator's statement referred to in Article 2 below and Protocol amendments will be maintained in the Institution's study files. In the event of a conflict between the terms of the Protocol, any Appendix or Schedule attached hereto, and the terms of this Agreement, the terms of this Agreement shall prevail except that the current Protocol will continue to control all clinical and scientific aspects of the Study.

## Article 2. Research Work

2.1    The Site represents that it will conduct this Study in strict compliance with any and all applicable federal, state, and local laws, regulations and guidelines, FDA requirements, good clinical practices, all requirements of the host institution or facility, and any other relevant professional standards, and specifically to conduct the Study in accordance with the Statement of Investigator, U.S. Food and Drug Administration (FDA) Form 1572, as described in 21 C.F.R. 312.53, which Principal Investigator has completed, signed, and delivered to PAREXEL prior to the commencement of the Study at the Site.

2.2    In the event Principal Investigator becomes either unwilling or unable to perform the duties required by this Agreement, Institution will cooperate, in good faith and expeditiously, to find a replacement investigator acceptable to PAREXEL and the Sponsor; however, Principal Investigator shall continue to be bound by all obligations and conditions stipulated in Article 10.2. In the event an acceptable substitute is not found, this Agreement may be terminated by PAREXEL or the Sponsor in accordance with Article 10 (Term and Termination). Institution's cooperation in finding an acceptable replacement does not negate its obligation to perform this Agreement up to the effective date of termination.

2.3    The Study will be deemed concluded when the Sponsor has completed the study of the number of patients specified in the Protocol and all follow up has been completed.

2.4    The Institution or Principal Investigator will obtain the written approval of the appropriate Institutional Review Board (IRB) prior to commencement of the Study and will furnish PAREXEL and the Sponsor with the IRB's letter of approval. In addition, the Institution or Principal Investigator will obtain the informed written consent of each patient enrolled prior to commencement of the Study and will provide PAREXEL with a signed statement verifying that such consent was obtained, in accordance with the Protocol and the Site will comply with all informed consent requirements, whether state, federal or local.

2.5    The Site will (a) account for all clinical supplies furnished by Sponsor or PAREXEL;  (b) keep a written inventory of any equipment supplied by Sponsor or PAREXEL according to guidelines provided by the Sponsor; (c) return all unused clinical or other supplies provided by Sponsor or PAREXEL at the conclusion of the Study; (d) report to Sponsor or PAREXEL all relevant Information and Data (as defined in Section 4.2 below) obtained under the Protocol; (e) submit to Sponsor or PAREXEL completed case report forms resulting from the Study ("Case Report Forms"); (f) retain all necessary records and documents about the Study as required by regulatory requirements, this Agreement, and/or the Protocol; and (g) at the request and expense of Sponsor, Site shall provide reasonable assistance to Sponsor with the preparation and submission of new drug applications or other pre-market applications relating to the Study, and with obtaining regulatory approvals as may be required by the FDA or other regulatory authority.

2.6    The Site shall promptly notify PAREXEL and Sponsor of any adverse effect which is the direct result of the Study Drug administered according to Sponsor Protocol No. CG104 ("Adverse Effect") or any injuries that otherwise occur during the course of the Study. Site agrees to provide medical treatment as reasonably necessary for any injury sustained by a patient enrolled in the Study as a result of Site's performance hereunder. Should any patient enrolled in Study suffer any Adverse Effect Sponsor will reimburse the Site for all reasonable hospital and medical costs associated with emergency treatment required to treat the Adverse Effect, but only to the extent such costs are (i) not covered by the patient's medical insurance, governmental program or third party provider, (ii) not attributable to Site's failure to adhere to the Protocol or the terms of this Agreement, or to acts or omissions of the Site, or (iii) not attributable to a pre-existing medical condition or underlying disease of the patient.

**Article 3.    Conference and Reports**

3.1    The Principal Investigator shall provide PAREXEL with such periodic written reports during the course of the Study as are requested by PAREXEL, as well as a final written report of the Study at the conclusion of the Study.

2 of 12
Case 09-50250    Claim 114-1    Filed 05/11/09    Desc Main Document    Page 5 of 17
Case: 09-50250    Doc# 176-1    Filed: 08/31/11    Entered: 08/31/11 16:25:27    Page 6
of 18
Case: 09-50250    Doc# 184-2    Filed: 09/22/11    Entered: 09/22/11 17:14:01    Page 9
of 23

3.2     The Site will fully cooperate with PAREXEL and will meet with representatives of PAREXEL, or its designate, at mutually convenient times for consultations, for review of lab and physical evaluations, and for such other purposes relating to the Study as deemed necessary by PAREXEL.

## Article 4.     Rights to Data

4.1     All documents, data, know-how, formulas, and drug provided to the Institution or Principal Investigator for purposes of the Study are and will remain Sponsor's Confidential Information and its sole and exclusive property and any such documents, data, know-how, formulas and unused drug will be returned to Sponsor, PAREXEL, or their designate upon request.

4.2     All results, data and information derived during the course of performing the Study ("Data") shall be Sponsor Confidential Information and Sponsor shall own said Data and will have the right to use Data in any manner deemed appropriate to Sponsor's business interests. Sponsor agrees that the medical and patient records generated by Institution or Investigator during the Study (other than the research records specified above) shall be and remain the property of the Institution or Investigator. Subject to the Confidentiality and Publication terms in this Agreement, Institution shall have the right to use the Data generated in the course of this Study to further its non-commercial research and educational mission.

4.3     All Data, unused drug and clinical specimens shall be delivered to PAREXEL or Sponsor by the Site in a timely manner throughout the performance of this Study, as provided in the Protocol, and in no event later than (10) business days after the date of termination of this Agreement or such date on which Sponsor otherwise requests delivery of Data, unused drug and clinical specimens.

## Article 5.     Consideration

5.1     In full consideration for the services of the Institution, Principal Investigator, and all support personnel, and for all resources provided by the same for the Study, PAREXEL, on Sponsor's behalf, agrees to pay to the Payee designated in Schedule A the expenses and fees set forth therein for work rendered in completing the Study according to the Protocol. Payment of these expenses and fees will be made according to the schedule of payments indicated in Schedule A. Schedule A outlines payment for services rendered under Protocol No. CG104. PAREXEL disburses funds on Sponsor's behalf and assumes no financial liability should funds cease to be available from Sponsor.

5.2     Payments will be made according to Schedule A, and only for those Study patients who meet all of the applicable admission, inclusion and exclusion criteria of the Protocol and for whom Institution or Principal Investigator has provided Case Report Form(s).

5.3     Monies paid to the Payee will be deemed in full satisfaction of all work performed pursuant to this Agreement.

5.4     Total payments per study patient will not exceed the limit indicated in Schedule A.

5.5     Notwithstanding the foregoing, or anything contained in the Protocol, if PAREXEL, on Sponsor's behalf, terminates the study prior to completion, PAREXEL agrees, on Sponsor's behalf, to pay the Payee fee set forth in Schedule A for each patient completed prior to the effective termination date, as well as other reasonable, non-cancelable obligations of the Institution incurred in furthering the Study prior to the effective date of termination which are not covered by the completed patient fee as established by written documentation submitted to PAREXEL. In no event, however, will the amount paid by PAREXEL upon premature termination exceed the total contract amount set forth in Schedule A. Payment by PAREXEL will be made within thirty (30) days of the effective termination date, defined in Article 10, below.

5.6     In the event there is a refund due to PAREXEL, on Sponsor's behalf, at the time of premature termination by either party, the Payee agrees to remit the same to PAREXEL or its designate within thirty (30) days of the effective termination date.

**Article 6.     Publicity**

6.1     No party to this Agreement shall use the Sponsor's name or the name of any party hereto in connection with any advertising or promotion of any product or service without the prior written permission of such party or Sponsor, as appropriate.

**Article 7.     Publications**

7.1     Upon completion of the Study, or when Data is adequate (in Sponsor's reasonable judgment), the Principal Investigator has the right to prepare his/her Data for publication. Manuscript(s) for publication, texts of talks, abstracts of papers, and similar material will be submitted to Sponsor for review and comment prior to publication. In order to insure that Sponsor will be able to make comments and suggestions where pertinent, material for public dissemination will be submitted to Sponsor for review at least thirty (30) days prior to submission for publication, public dissemination, or review by a program committee.

**Article 8.     Intellectual Property**

8.1     Neither Principal Investigator nor Institution, including its employees or agents, shall acquire any rights of any kind whatsoever with respect to the Study Drug or Sponsor intellectual property as a result of performance under this Agreement or otherwise. All inventions, discoveries, and technology relating to the Study Drug, Data or the Study, whether patentable or not, conceived by Institution or its Principal Investigator, solely or jointly with others as a result of work done under this Agreement (hereinafter "Inventions"), shall be, and remain, at all times the sole and exclusive property of Sponsor.

8.2     The Institution and the Principal Investigator shall disclose to Sponsor all Inventions and other creative ideas and developments conceived or reduced to practice as a direct result of this Study. Such disclosure shall be made fully and promptly in writing to an authorized representative of Sponsor. Any and all acts necessary to assist Sponsor in perfecting its right to any and all Inventions shall be performed by Principal Investigator or Institution's employees or agents, as appropriate. Institution warrants by the execution of this Agreement, that it has not entered, and will not enter, into any contractual agreement or relationship which would in any way conflict with or compromise Sponsor's proprietary interest in, or rights to, any inventions, discoveries, or

technology existing at the time of the execution of this Agreement or arising out of or related to its performance thereunder.

## Article 9.    Compliance with Section 306 of the Federal Food, Drug and Cosmetic Act

9.1    By signature on this Agreement, the Institution and Principal Investigator hereby certify that neither the Institution nor Principal Investigator nor any person employed by the Institution or Principal Investigator to work on this study has been debarred under Section 306(a) or Section 306(b) of the Federal Food, Drug and Cosmetic Act and that no debarred person will in the future be employed by the Institution or Principal Investigator in connection with any application for approval of a drug by the Federal Food and Drug Administration.

9.2    The Institution and Principal Investigator further certify that within five (5) years preceding the effective date of this Agreement neither the Institution nor Principal Investigator nor any person employed by the Institution or Principal Investigator have been convicted of any offense required to be listed under Section 306(k)(2) of the Federal Food, Drug and Cosmetic Act.

## Article 10.    Term and Termination

10.1    This Agreement will become effective upon the date it is fully executed by all parties and shall continue in effect for the full duration of the Study according to the Protocol unless sooner terminated in accordance with the provisions of this Article. Sponsor or PAREXEL may terminate this Agreement immediately upon written notice to the Site.

10.2    Termination of this Agreement by any party for any reason shall not affect the rights and obligations of the parties accrued prior to the effective date of termination of this Agreement.  No termination of this Agreement, however effectuated, shall affect Sponsor's rights and duties under Article 8 hereof, or release the parties hereto from their rights and obligations under Articles 4, 5, 6, 7, 8, 9, 11, 12, and 13.

10.3    Either party may terminate this Agreement upon thirty (30) days written notice pursuant to a material breach of contract by the other party, provided that the breaching party is given a reasonable amount of time, which shall be no more than 30 days, to correct such breach.  Institution and/or Principal Investigator may terminate the Study if necessary to protect the health, welfare or safety of any Study subject.

10.4    Upon completion of the Study, the Institution shall return to PAREXEL all unused compounds, drugs, devices, equipment, and related materials and all copies of Confidential Information that were furnished to the Site.

## Article 11.    Independent Contractor

11.1    Institution and Principal Investigator shall perform services under this Agreement only as an independent contractor, and nothing contained herein shall be construed to be inconsistent with that relationship or status. Institution and Principal Investigator, and their respective employees, and consultants shall not be considered employees or agents of Sponsor or PAREXEL and, as such, shall not be entitled to any benefits available to

employees of Sponsor or PAREXEL. This Agreement shall not constitute, create, or in any way be interpreted as, a joint venture, partnership, or business organization of any kind.

### Article 12.   Indemnity

12.1   If any Adverse Effect gives rise to a claim against the Site, Sponsor shall defend, hold harmless and indemnify the Site against any direct loss, damage, or injury, owing to the claim, provided (1) that the Site, its Regents, officers, agents, and employees are shown to have adhered to and complied with all specifications and directions of the Protocol; (2) that Sponsor is promptly notified in writing of such claim or suit; and (3) Sponsor shall have full control of the defense, including settlement of the claim or suit and receive the full cooperation of Institution, its Regents, officers, agents, and employees. This Agreement by Sponsor to indemnify and hold harmless shall not cover any loss, damage, injury, or expense arising from the negligence (whether active or passive, and whether concurrent, joint, or sole) or misconduct on the part of the Site or any of its Regents, officers, agents, or employees.

12.2   The Site acknowledges that PAREXEL does not provide indemnification of any kind for the services provided hereunder and is not a party to the foregoing indemnification obligation.

12.3   Neither PAREXEL nor Sponsor will be responsible for, and Institution shall defend, indemnify and hold PAREXEL and Sponsor harmless from, any loss, claim, or demand arising from any (a) injuries or damages incurred if they are the result of or are alleged to be the result of negligence or willful misconduct on the part of the Site or Site's employees or agents; (b) activities contrary to the Protocol; (c) unauthorized warranties made by the Site or the Site's employees or agents concerning the product being tested; (d) in any case in which written informed consent was not obtained for the patient involved in accordance with the Protocol; (e) breach of Article 9 hereof by the Institution or Principal Investigator; or (f) prior treatment a patient enrolled in the Study received which gives rise to a condition other than that for which the Study Drug is being administered .

### Article 13.   Conflict of Interest and Confidential Information

13.1   The Institution and Principal Investigator agree that they, as well as all support personnel, are not presently under any agreement or obligation which conflicts with the duties and obligations owed to PAREXEL or Sponsor under this Agreement, and further agree not to undertake any such obligation or agreement during the course of the Study.

13.2   The Principal Investigator certifies that he/she shall, in any form or manner reasonably requested by Sponsor, disclose, and shall use his/her reasonable best efforts to cause any sub-Investigators for the Study to disclose, all of the following that they and their spouses, domestic partners and dependent children own or possess directly, indirectly, or equitably (all collectively "Financial Interests"):

   (a) All compensation, payments (including other research grants, consulting or director's fees, honoraria, speaking and meeting travel fees and reimbursement) and items or services of value provided by or on behalf of the Sponsor (excluding compensation received under this Agreement);
   (b) All licenses, assignments, or other conveyances of rights or interests in real, personal or intellectual property with the Sponsor or relating to the Study Drug;

(c) All forms of interests in the equity (including stock, options and warrants) or debt of the Sponsor or of other entities having a financial interest in the Study Drug; and

(d) All other financial interests, payments and other compensation described under 21 C.F.R. § 54.2(a)-(f).

During the conduct of the Study and for one (1) year after its completion, the Principal Investigator agrees to execute and update such forms, disclosures and certifications now or subsequently required by Sponsor or FDA related to the Financial Interests. The Institution hereby warrants that it has implemented a "Conflicts of Interests" disclosure and management policy and program that complies with all applicable rules and regulations, and the Principal Investigator warrants that he/she has and will continue to comply with such policies and programs.

13.3    The Institution and Principal Investigator agree as follows:

(a)    Anything in this Agreement to the contrary notwithstanding, any and all knowledge, know how, practices, process, data, financial information, product plans, business plans or other information (hereinafter referred to as Confidential Information") disclosed or submitted in writing or in other tangible form or orally to the Institution or Principal Investigator or to any of them individually, shall be received and maintained by the receiving party in strict confidence and not disclosed to any third party during the conduct of the Study and for five (5) years thereafter. Specifically, Sponsor's Confidential Information includes the Protocol, Data, Inventions and Case Report Forms. Furthermore the Institution and Principal Investigator agree to use the Confidential Information only for the purposes of this Agreement except as provided for herein. These parties may disclose Confidential Information to their employees or staff who require access thereto for the purposes of this Agreement provided, however, that prior to making any such disclosures each such employee shall be bound by the same obligations to maintain Confidential Information in confidence and not to use such information for any purpose other than in accordance with the terms of this Agreement.

(b)    The terms of this Agreement, including but not limited to the financial terms, shall also be considered Confidential Information and will be maintained in confidence by the parties in accordance with section 13.3(a), above. If, however, the Institution or Principal Investigator are required by law or regulation to disclose such information, they may do so without breaching their obligation under this Section, provided, in advance of disclosure, they notify PAREXEL of the information to be disclosed, the reason for disclosure, and the date of disclosure and use commercially reasonable efforts to limit the nature and scope of information to be disclosed.

(c)    Nothing contained herein will in any way restrict or impair any party's right to disclose any Confidential Information which at the time of its receipt :

(i)    is available in the public domain, or becomes available to the public through no act of the party receiving said Confidential Information; or

(ii) is independently known by the party receiving the Confidential Information, prior to receipt thereof, which said party can demonstrate by documented proof; or

(iii) is lawfully given to the receiving party by a third party who is not bound by any obligation to preserve it as confidential.

(d) If either party breaches, or threatens to breach the provisions of Section 13.3 above, both parties agree that the non-breaching party may have no adequate remedy at law and should therefore be entitled to immediate injunctive and other equitable relief, without bond and without the necessity of showing actual money damages.

## Article 14.   Assignment

14.1   This Agreement and any associated agreements may not be assigned by the Institution or the Principal Investigator without PAREXEL's prior written consent.

14.2   This Agreement is assignable to any subsidiary, division, or affiliate of PAREXEL.

## Article 15.   Modification

15.1   Any agreement to change the terms of this Agreement in any way shall be valid only if the change is made in writing and approved by mutual agreement of authorized representatives of the parties hereto.

## Article 16.   Notices

16.1   Notices, invoices, communications, and payments required or permitted hereunder shall be considered made and effective when deposited in the US mail, postage prepaid, and addressed to the appropriate party at the address noted below, unless by notice to the other parties a different address shall have been designated.

If to PAREXEL:          PAREXEL International Corporation
                        2520 Meridian Parkway
                        Suite 200
                        Durham, North Carolina 27713
                        Attn: Cogentus CR Asst.

If to Sponsor:
                        Cogentus Pharmaceuticals, Inc.
                        John Jermano, SVP Clinical Operations
                        301 Ravenswood Ave, Suite 100
                        Menlo Park, CA 94025
                        **Copy to:** Peg Horn (same address)

If to Institution:       Parkersburg Cardiology Associates, Inc.
                        [600 18th Street, Suite 512
                        [Parkersburg, WV 26101
                        Attention: Mary Holbert or Lee Ann Fragale

If to Principal Inv.:    Stanley M. Pamfilis, M.D.

600 18th Street, Suite 512
Parkersburg, WV 26101
Attention: Stanley M. Pamfilis, M.D.

**Article 17. Regulatory Inspection**

17.1 The Site shall notify PAREXEL immediately by telephone or facsimile if the Food and Drug Administration or any other governmental or regulatory authority requests permission to or does inspect the Site's facilities or research records relating to this Study during the term of this Agreement and will provide in writing to PAREXEL copies of all materials, correspondence, statements, forms and records which the Site receives, obtains, or generates pursuant to any such inspection.

**Article 18. Miscellaneous**

18.1 Titles to the Articles in this Agreement are solely for convenience and do not constitute a substantive part of this Agreement.

18.2 If any provision of this Agreement is held invalid or unenforceable, the remainder of this Agreement shall not be affected thereby.

18.3 The waiver of or acquiescence by any party hereto to any terms or provision hereunder, or the failure of any party to insist upon strict compliance with any warranty, representation, agreement, term, or condition in this Agreement, shall not constitute a waiver of any subsequent default or failure, whether similar or dissimilar.

18.4 The Site agrees to the administrative terms and conditions set forth in the Protocol.

18.5 The Site understands and agrees that this Agreement is being entered into on behalf of the Sponsor and for the Sponsor's benefit, and that, accordingly, Sponsor may enforce this Agreement as if it were a party hereto.

18.6 Any administrative or financial additions or modifications to this Agreement will be incorporated by reference to this Agreement when mutually agreed to in writing.

IN WITNESS WHEREOF, the parties hereto have set their hands in duplicate with the intention that this be a binding agreement as provided herein.

PAREXEL INTERNATIONAL, LLC
On behalf of Cogentus Pharmaceuticals, Inc.

By _____

Name _K A R E N   F A L K N E R_

Parkersburg Cardiology Associates, Inc:

By _____

Name _JOHN T. VIKREAI III_

Title _____    Title _____

Date _____    Date __3/27/__

Stanley M. Pamfilis, M.D.:

Date ___4/27/08___

10 of 12

Case 09-50250   Claim 114-1   Filed 05/11/09   Desc Main Document   Page 13 of 17
Case: 09-50250   Doc# 176-1   Filed: 08/31/11   Entered: 08/31/11 16:25:27   Page 14
of 18
Case: 09-50250   Doc# 184-2   Filed: 09/22/11   Entered: 09/22/11 17:14:01   Page 17
of 23

Schedule A

Protocol No. CG 104: "*A Randomized, Double-Blind, Double-Dummy, Parallel Group, Phase 3 Efficacy and Safety Study of CGT-2168 Compared with Clopidogrel to Reduce the Incidence of Upper Gastrointestinal Events including Bleeding and Symptomatic Ulcer Disease*"

(1)   **Enrollment Fee Per Completed Patient:**                                            $ 7,571.52

(2)   **Other compensation:**
   - Pharmacy Set up Fee = $500 per site (Paid upon receipt of invoice)
   - A $2,000 start-up payment will be given at time of contract execution

(3)   **Payment Terms:**

PAREXEL will make payments of per patient fees in US dollars quarterly. Payments will be based on number of completed, monitored, and cleaned Case Report Forms received by PAREXEL during the month and contingent upon PAREXEL's review and approval of the Case Report Forms submitted. Costs not referenced above, including but not limited to staff costs, laboratory fees, administrative fees, x-rays, worksheets (quality of life, etc.), data coordinator fees, travel fees, must be paid from the previously stated per subject enrollment fee. The total per subject enrollment fee covers all the core study procedures. To be eligible for payments, the procedures must be performed in full compliance with the Protocol and this Agreement, and the Data submitted must be complete and correct.

(4)   **Invoices:**
Original invoices pertaining to this study should be submitted for reimbursement to the following address:

   PAREXEL International
   2520 Meridian Parkway, Suite 200
   Durham, North Carolina 27713
   **Attention: Cogentus CRAsst**

Please note that invoices **must** contain the following information or they will be returned, which will delay payment:
   - Protocol number
   - Principal Investigator Name
   - Invoice date
   - Date & description of services provided

The parties agree that this Schedule A is part of the Study Agreement clarifying the payment schedule associated with this Agreement. Payments shall be made in accordance with the provisions set forth in this Schedule A and the attached grid, with the last payment being made after the site completes all its obligations under the Agreement and any appendix or exhibits thereto. The PRINCIPAL INVESTIGATOR acknowledges and agrees that his or her judgment with respect to his or her advice to and care of each patient is not affected by the compensation

11 of 12
Case 09-50250   Claim 114-1   Filed 05/11/09   Desc Main Document   Page 14 of 17
Case: 09-50250   Doc# 176-1   Filed: 08/31/11   Entered: 08/31/11 16:25:27   Page 15
of 18
Case: 09-50250   Doc# 184-2   Filed: 09/22/11   Entered: 09/22/11 17:14:01   Page 18
of 23

the site receives hereunder. The parties agree that the payee designated below is the proper payee for this Agreement, and that payments under this Agreement will be made only to the following payee:

| PAYEE NAME: | Parkersburg Cardiology Associates. |
| PAYEE ADDRESS: | 600 18th Street Suite 512 |
| | Parkersburg, WV 26101 |
| TAX ID NUMBER | 550627850 |

THE TAX ID NUMBER PROVIDED ABOVE IS A/AN:

□ Social Security Number
X Employer Identification Number

Wire transfer information must be provided to SPONSOR/PAREXEL if payments will be made to an individual or organization outside of the United States.

INSTITUTION will have 30 days from the receipt of the final payment under this Agreement to resolve any payment discrepancies, which have arisen during the course of the Study.

12 of 12

Case 09-50250   Claim 114-1   Filed 05/11/09   Desc Main Document      Page 15 of 17

Case: 09-50250   Doc# 176-1   Filed: 08/31/11   Entered: 08/31/11 16:25:27   Page 16
of 18

Case: 09-50250   Doc# 184-2   Filed: 09/22/11   Entered: 09/22/11 17:14:01   Page 19
of 23

**Study Details**

Short Name: Copenaus
Title: A Randomized, Double-Blind, Double-Dummy, Parallel Group, Phase 3 Efficacy and Safety Study of COT 2168 Compared with Docolloprol to Reduce Upper Gastrointestinal Events including Bleeding and Symptomatic
Budget Type: Complete
Phase: III
Patient Type: Outpatient
Single Patient Duration: 96 weeks
PI Name: Dr. Ramfils

**Visit Schedule**  United States, Sub-Study All Sub-Studies
(Cost Per Visit View)

| Code | Procedure | Qty | OH | Screening | Day -1 | Wk 4 | Wk 8 | Wk 16 | Wk 24 | Wk 32 | Wk 40 | Wk 48 |
|------|-----------|-----|----|-----------|--------|------|------|-------|-------|-------|-------|-------|
| INCON | Informed consent | 1 | ✓ | 1 | | | | | | | | |
| 99205 | Medical history with expanded cardiovascular history | 1 | ✓ | 1 | | | | | | | | |
| 99211 | Height | 1 | ✓ | 1 | | | | | | | | |
| 99206 | Vital signs and Weight | 9 | ✓ | 1 | 1 | 1 | 1 | 3 | 2 | 1 | 1 | 1 |
| 99207 | Physical examination (complete) | 1 | ✓ | 1 | | | | | | | | |
| 99212 | Physical examination (Targeted) | 8 | ✓ | | 1 | 1 | 1 | 2 | 1 | 1 | 3 | 1 |
| 93000 | 12-lead ECG | 2 | ✓ | 1 | | 1 | | | | | | 1 |
| 93715 | SODA (Patient Completed Questionnaire) | 4 | ✓ | 1 | 1 | | | | 1 | | | 1 |
| 82270 | Fecal Occult blood test | 3 | ✓ | 1 | | 1 | | | 1 | | | 1 |
| 84702 | Pregnancy TEST | 3 | ✓ | 1 | 1 | | | | | | | |
| INCEX | Review of Inclusion/Exclusion criteria | 2 | ✓ | 1 | 1 | | | | | | | |
| ADEVT | Adverse events assessed | 8 | ✓ | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| CONMD | Concomitant medications assessed | 8 | ✓ | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| S0248 | Compliance Assessment via pill counts | 8 | ✓ | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 43231 | Gastroduodenal endoscopy (if Required per protocol) | 0 | ✓ | | | | | | | | | |
| 43378 | Cholestoscopy in lieu of EGD | 0 | ✓ | | | | | | | | | |
| 77003 | Radiograph in lieu of EGD | 0 | ✓ | | | | | | | | | |
| 36415 | Lab procedure fee | 8 | ✓ | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |

| Code | Non Procedure | Qty | OH | Screening | Day -1 | Wk 4 | Wk 8 | Wk 16 | Wk 24 | Wk 32 | Wk 40 | Wk 48 |
|------|---------------|-----|----|-----------|--------|------|------|-------|-------|-------|-------|-------|
| NP017 | Study Coordinator, Interactive Voice Response System (IVRS) - Per Hour | 8 | ✓ | | | | | | | | | |
| NP026 | Physician Fee | 9 | ✓ | 1 | 1 | 1 | 1 | 1 | 2 | 1 | 1 | 1 |
| NP032 | Study Coordinator Fee | 9 | ✓ | 1 | 1 | 1 | 1 | 1 | 2 | 1 | 1 | 1 |

Overhead (All costs) (US$): 20%

Total Costs Per Visit (US$): US$1,251.36  US$831.60  US$765.72  US$744.48  US$744.48  US$786.72  US$744.48  US$744.48  US$603.20

Total cost per Patient (US$) 7671.32

| Code | Site Costs | Qty | | Screening |
|------|-----------|-----|--|-----------|
| SC008 | Pharmacy: Set-Up-Fee | 1 | | US$500.00 |

Total Site Costs (US$)  US$500.00

3/25/2009 10:17 AM

Case 09-50250   Claim 114-1   Filed 05/11/09   Desc Main Document   Page 16 of 17
Case: 09-50250   Doc# 176-1   Filed: 08/31/11   Entered: 08/31/11 16:25:27   Page 17 of 18
Case: 09-50250   Doc# 184-2   Filed: 09/22/11   Entered: 09/22/11 17:14:01   Page 20 of 23

# GrantPlan Visit Schedule Report

**Ad Hoc Costs**

(1) A $2000 startup payment will be given at time of contract execution.

**Invoiceable Costs:**

Every 8 Wk visit total is $898

Unscheduled visit total includes: Adverse Events, Concomitant Meds, and SC time @$116. Additional procedures as required by protocol are invoiceable.

Early Term visit total is $730

Every 8 Wk, unscheduled, and Early Term visits will be paid upon receipt of invoice for actual visit.

2/25/2006 10:17 AM

Mark S. Bostick (Bar No. 111241)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mbostick@wendel.com

Attorneys for Trustee
John W. Richardson

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re

COGENTUS PHARMACEUTICALS,
INC., fdba AMPLIFY THERAPEUTICS,
INC.,

　　　　　　　Debtor.

Case No. 09-50250 ASW
Chapter 7

**CERTIFICATE OF SERVICE**

I, Carmen King, declare:

I am a citizen of the United States and am employed in Alameda County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1111 Broadway, 24th Floor, Oakland, California 94607-4036. On August 31, 2011, I served a copy of the following documents:

**TRUSTEE'S OBJECTION TO UNSECURED CLAIM OF PARKERSBURG CARDIOLOGY ASSOCIATES AND NOTICE THEREOF [CLAIM NO. 114]**

[X]　**(by mail)** by placing a true and correct copy thereof enclosed in a sealed envelope with first-class postage prepaid in a designated area for outgoing mail, addressed as set forth below. At Wendel, Rosen, Black & Dean, LLP, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Oakland, California.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

001781.0248\1974934.1

*CERTIFICATE OF SERVICE*

1

Parkersburg Cardiology Associates
600 18th Street, Suite 512
Parkersburg, WV 26101

U.S. Trustee
280 So. First Street, Room 268
San Jose, CA 95113

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on August 31, 2011, at Oakland, California.

_/s/ Carmen King_____
Carmen King

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

001781.02481\1974934.1   *CERTIFICATE OF SERVICE*                    2